## GREENWOOD v. THE WILLIAM FLETCHER AND THE GRAPESHOT.

*(District Court, S. D. New York. March 1, 1889.)*

COLLISION—BETWEEN TUGS—MUTUAL FAULT—INJURY TO BOAT AT PIER.

The tug F. lay in the North river, stern to the docks, drifting with the flood tide, and about to back into her slip when opposite it. The tug G., coming up stream, close to the docks, at a speed of at least four knots, observed the F., blew one whistle to show that she intended to pass inside of her, received no reply, and kept on. The pilot of the F., without looking astern of him, backed, collided with the G., and threw the latter against the boat H., which lay at the pier. *Held*, that both tugs were liable for the damage to the H.,—the G., for maintaining her speed, in her position, after observing that her signal was unanswered; the F., for backing without looking astern to see if the way was clear.

In Admiralty.

*Hyland & Zabriskie*, for libelant.
*Wilcox, Adams & Macklin*, for the Fletcher.
*George W. Drase*, for the Grapeshot.

BROWN, J. The libelant's steam canal-boat Hebe, on the 15th December, 1888, while lying at the end of pier 41, North river, heading down, and taking on a cargo of iron, was run into about half-past 4 P. M. by the steam-propeller Grapeshot, which, with her stem, struck the Hebe's port bow a severe blow, doing damage to the Hebe and her cargo, for which this libel was filed.

The Grapeshot was coming up river in the slack flood-tide, close by the line of the piers, looking for a job; and when between piers 40 and 41 she was struck on the port side, about abreast of the pilot-house, by the stern of the steam-tug Fletcher, which was then backing into that slip, and by that collision the Grapeshot was thrown out of her course, so as to make the latter unavoidably collide with the Hebe. The second collision being the direct consequence of the first, and the libelant's boat not being in fault, the question is simply which of the two defendant boats is in fault for their own collision. *The W. J. McCaldin*, 35 Fed. Rep. 333. The Fletcher had come there as usual, designing to lie up for the night, on the south side of pier 40; but, finding that berth occupied, she rounded head out into the river until about square across, opposite pier 40, and then waited a few minutes, slowly drifting up with the tide, purposing to back in along the northerly side of that pier. There is great conflict in the evidence as to the distance the Fletcher went

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

out into the stream, where she remained still, and as to the length of time she was still, and the distance from the shore at which the Grapeshot was coming up.   All agree that the latter was coming on a line inside of the Fletcher; the witnesses of the latter contending that the stern of the Fletcher was at no time more than 100 feet outside of the line of the piers, and the Grapeshot not more than half that distance.   The Grapeshot's witnesses testify that the Fletcher was at least 300 feet from the line of the piers, and the Grapeshot from 200 to 250 feet.   Had the distance from the shore been so much as the Grapeshot claims, it is extremely improbable that any collision with the Hebe would have followed the first collision.   It would naturally have been avoided by the Grapeshot,—a steam-tug very easily handled.   The witnesses for the Fletcher are probably more accurate in their estimates of both times and distances.

Both boats seem to me clearly to blame for this collision.   If the Grapeshot had justifiable cause for proceeding so near the line of the piers in looking for business, she was at least bound to go with great caution, (*The Monticello*, 15 Fed. Rep. 474; *The Fanwood*, 28 Fed. Rep. 373,) and at so slow a speed as would enable her to be handled with ease in keeping out of the way of other boats going in and out of the slips. She claimed to have been going under one bell, at the rate of about four knots only.   This was considerable speed for such a position and time; but, considering the facility with which such boats are handled, I cannot understand why she did not avoid this collision if she had not been going at greater speed.   Going only at the rate of three knots, she could stop within a length; and she could turn very rapidly within her length, of about 65 feet.   When she got no answer to her first whistle, off pier 39, she should have checked her speed, so as to be able to take care of herself, whatever the Fletcher might do.   The Fletcher is to blame for not having looked about on the shore side before she backed.   The Grapeshot was coming up inside of her, and when the Fletcher started back must have been within 200 feet of her,—probably considerably less.   The captain admits that he did not look back, or notice her; nor did he hear her whistles.   He was evidently undertaking to do too much himself, without proper assistance from any other lookout to notice the signals given, and to look on all sides.   *The E. H. Webster*, 22 Fed. Rep. 171; *The Pavonia*, 23 Fed. Rep. 204, 23 Blatchf. 403; *The W. J. McCaldin*, 35 Fed. Rep. 330.   Decree for the libelant against both vessels, with costs.