THE DORSET. THE POCAHONTAS. THE CRISFIELD. THE NO. 18.

(Circuit Court of Appeals, Fourth Circuit. July 1, 1919.)

Nos. 1691, 1692.

1. COLLISION ⬥102—MUTUAL FAULT ON STEAMSHIP LEAVING PIER AND PASSING TOW.

A collision between a steamship being backed from her pier and headed for sea by a tug, and the tow of a tug passing in the channel, *held* due to faults of the masters of both tugs, each of whom left it to the other to keep out of the way and failed to take any precautions.

2. COLLISION ⬥106—WHAT ARE "SPECIAL CIRCUMSTANCES" REQUIRING REASONABLE CARE FROM BOTH VESSELS.

The case of a steamship backing from her pier into a channel and a passing tug with a tow is one of "special circumstances," within Inland Navigation Rules, art. 27 (Comp. St. § 7901), and both vessels are required to navigate with reasonable care to avoid collision.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Special Circumstances.]

3. COLLISION ⬥96—VESSEL BACKING INTO CHANNEL HAS BURDEN OF GREAT CARE.

A vessel backing into a channel, where other vessels are passing, is under the burden of great care in her movements and in giving and responding to signals.

4. COLLISION ⬥95(1)—VESSEL IN CHARGE OF TUG NOT LIABLE FOR FAULTS OF MASTER OF TUG.

A steamship, under the exclusive control of the master of a tug employed to move her from her slip and start her to sea, is not liable for faults in her navigation which contribute to a collision.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty for collision by Arthur Lloyd Hughes, master of the British steamship Dorset, against the tug Pocahontas and the tug Crisfield and barge, the New York, Philadelphia & Norfolk Railroad Company, claimant, with cross-libel. Decree holding both tugs in fault, and the Lambert's Point Towboat Company, claimant of the Pocahontas, appeals. Affirmed.

For opinion below, see 250 Fed. 867.

E. E. Blodgett, of Boston, Mass., and Braden Vandeventer, of Norfolk, Va. (Hughes, Vandeventer & Eggleston, of Norfolk, Va., on the brief), for appellant Lambert's Point Towboat Co.

Robert M. Hughes, of Norfolk, Va. (Willcox, Cooke & Willcox, Hughes, Little & Seawell, and Thomas H. Willcox, all of Norfolk, Va., on the brief), for appellant New York, P. & N. R. Co.

Edward R. Baird, Jr., of Norfolk, Va., and John M. Woolsey, of New York City (Kirlin, Woolsey & Hickox and Robert S. Erskine, all of New York City, on the brief), for appellee Hughes.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. [1] On the morning of January 25, 1917, the British steamship Dorset, with full cargo, starting to sea from

Pier No. 4 at Lambert's Point, Va., in charge of the tug Pocahontas, collided with barge No. 18 moving down the channel in tow of the tug Crisfield. For the resulting damage the master of the Dorset on January 30, 1917, filed a libel against both tugs and the barge. On February 7, 1917, the New York, Philadelphia & Norfolk Railroad Company, owner of the Crisfield and the barge, filed a libel against the Pocahontas and the Dorset. The causes were consolidated, and the libel of each of the parties was treated as the answer to that of the others. On the Pocahontas' plea of limitation of liability to both libels, by stipulation her value was fixed at $15,000. Upon evidence taken by deposition and in open court, the District Court held, that the collision resulted from the negligent navigation of the tug Pocahontas and the tug Crisfield, and held their owners equally liable for the damages $25,500. The case turns chiefly on conflicting estimates of time and distance, founded on recollection of impressions received at a time of crisis and excitement, and as usual in such cases it is difficult to find the truth.

The Dorset is a twin screw steamer, 7,000 gross tonnage, 4,827 net, 460 feet long, 58 feet beam, and 31 feet deep. She began to move away from the pier at 10:45 in the morning, an earlier start being prevented by fog. Her agents had employed Lambert's Point Towboat Company to take charge of turning the ship in the channel and starting her to sea, and the towing company used its tug Pocahontas, in command of Capt. Mills, for that purpose. Mills took entire charge of the steamer, and its officers and crew acted under his orders. There is conflict in the evidence as to whether the Pocahontas was ever attached by a hawser to the Dorset, but all the witnesses agree that she was used to push the Dorset around. As the lines were let go the Dorset gave one long blast to indicate that she was about to leave the pier for the channel, and by order of Mills her engines were put slow astern and her helm hard aport. There was no answer to the whistle. She moved out of the dock with her engines slow astern at the speed of about a mile to a mile and a half an hour. When the Dorset was about halfway out of the dock, the Crisfield, coming down the channel about half mile away with the car float in tow, gave two blasts of her whistle, indicating her desire to pass astern of the Dorset. The vessels were in view of each other. The movements of the Dorset were obvious to the master and crew of the Crisfield, and Capt. Mills on the Dorset could not have failed to discern the course and position of the Crisfield and her tow. The Dorset made no response to this signal, and continued her course astern without reversing either engine, being then at a considerable angle with the dock. In a very short time, probably a minute, the Crisfield again blew two blasts, and to this signal the Dorset assented by two blasts.

According to the testimony of Capt. Mills, when these signals were given the Crisfield was only about 30 or 40 feet away. If that be true, it is evident that he continued his movement astern with the obvious risk of collision towards the course which he saw the Crisfield was making without reversing either engine. However that may be, the log of the Dorset and other evidence show that, with the Crisfield

and her course and the danger of collision perfectly obvious, Capt. Mills delayed one minute to put his starboard engine full speed ahead and two minutes to put his port engine full speed ahead. The use of these two minutes almost certainly would have prevented the collision. Indeed, Scott, the pilot who was to take the Dorset to sea, testified that she continued her movement to effect the swing or turn until the collision was imminent, and only then put full speed ahead. Seeing the course and nearness of the Crisfield, the navigator of the Dorset, on hearing her first signal, had two courses open: He should have given the signal of dissent or the danger signal before continuing his movement, thus putting upon the Crisfield the duty either to stop or alter her course; or he should have assented to the first signal of the Crisfield and immediately put both engines full speed ahead to get out of the way of the approaching tug. His negligence was in doing neither, and continuing his course, as he himself testified, after hearing the signal from the Crisfield.

Against this inference it is contended on behalf of the navigator of the Dorset that the testimony shows there was abundant space on the other (the west) side of the channel for the Crisfield and her tow, that the Crisfield was bound to use that space, and that Capt. Mills had a right to assume that it would do so. The evidence is in hopeless conflict as to the space left open between the Dorset and the vessels anchored on the other side. It is impossible to say with certainty what the open space was; but, allowing for exaggeration on both sides, it seems reasonably certain that the space was so narrow as to require the navigator of the Dorset to reverse promptly his engines when he saw the approaching tug and tow and the course they were taking after his signal of assent. It is contended, also, that the Dorset would have run into the pier if she had put her engines full speed ahead when the Crisfield first signaled. It is true that at the time of the collision she was at an angle of 30 to 45 degrees with the channel; but the master of the Dorset testified that the order to go full speed ahead should have been given by Capt. Mills before it was, thus clearly indicating that in his opinion the order would not have resulted in striking the pier; and the fact is that when the movement ahead was made it did not result in striking the pier.

[2, 3] The situation was one of special circumstances under article 27 of the Inland Navigation Rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 102 [Comp. St. § 7901]), not a crossing or overtaking case (The Transfer No. 17, 254 Fed. 673, —— C. C. A. ——; The M. Moran, 254 Fed. 766, —— C. C. A. ——; The William A. Jamison, 241 Fed. 950, 154 C. C. A. 586), and required reasonable care to avoid immediate danger. Atlas Transp. Co. v. Lee Line Steamers, 235 Fed. 492, 149 C. C. A. 38, is relied on as holding the signal of the Crisfield and the assent of the Dorset imposed no obligation on the Dorset. But that was an overtaking case, where ordinarily there is no duty on the overtaken vessel, except to keep her course, unless she perceives danger not obvious to the overtaking vessel. A vessel backing across a channel is in a very different position, and is under the burden of great care in her movements and in giving and responding to sig-

nals. The Sicilian Prince (D. C.) 128 Fed. 133, 144 Fed. 951, 75 C. C. A. 677; The Norman B. Ream, 252 Fed. 409, 164 C. C. A. 333. This burden of care we have shown the navigator of the Dorset did not discharge.

The fault of the Crisfield is even more manifest. No certain conclusion can be reached as to the length of the hawser. Experienced navigators testifying for her say it was only 200 feet; those testifying against her say it was much longer. The District Court's conclusion that it was 600 feet is of great weight. If this finding be correct, she was violating the rules of navigation, and so assumed the burden of showing, not only that the collision might not or was probably not caused by her violation of the rules, but that it could not have been. Lie v. San Francisco & Portland S. S. Co., 243 U. S. 291, 37 Sup. Ct. 270, 61 L. Ed. 726. But, assuming that her hawser was not unlawfully long, there is no doubt of her negligence in other respects. She was moving 7 miles an hour, her full speed, with a cumbrous tow, turning a bend in water where there were many vessels anchored, and where vessels going to sea might back into the channel at any moment, and with knowledge, not only from signal, but by sight, that the Dorset was actually doing so. Yet she continued her course and speed until it was too late to escape collision, recognizing no duty to take into account the movements of the Dorset. Under such conditions it was the duty of the Crisfield to take every reasonable precaution, especially as to course and speed, not to interfere with the Dorset or other vessels leaving their slips. The Illinois, 87 Fed. 574, 31 C. C. A. 111; Greenwood v. The William Fletcher (D. C.) 38 Fed. 156.

Mills, the navigator of the Dorset, testified that, although he assented to the passing signal of the Crisfield, he considered that he owed no duty to keep out of her way; that she proceeded at her own risk in all respects. Forrest, the navigator of the Crisfield, testified that when the Dorset gave her two whistles of assent he did not understand that he was under any obligations to keep out of her way. This curious attitude and misconception of duty of two experienced navigators explain the faults of both which, acting together, resulted in the collision.

[4] It remains to say that the owners of the Dorset were not liable for the faults in her navigation. She was under the exclusive control of Mills, not as a pilot, but as the master of the tug Pocahontas, employed by the agents of the Dorset to take her from the dock and start her to sea, and the tug was actually pushing her in making the maneuver. Under these circumstances the negligence in the navigation of the Dorset was the negligence of the towing company as an independent contractor. The Eugene F. Moran, 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. 600; Sturgis v. Boyer et al., 24 How. 110, 16 L. Ed. 591; Wilmington Railway Bridge Co. et al., v. Franco-Ottoman Shipping Co., 259 Fed. 166, — C. C. A. —.

Affirmed.