## THE HELEN.

## THE WHITE ASH.

### THE W. S. HOLBROOK et al.

(Circuit Court of Appeals, Second Circuit. December 2, 1924.)

No. 108.

**1. Collision ☞96—Tugs which had not undertaken work of moving colliding vessel held not liable.**

Where vessel backing out of slip under her own power collided with vessel on other side of slip, tugs engaged to move her, but which at time of collision were waiting at mouth of slip, and had not undertaken work of moving vessel, were not liable.

**2. Collision ☞115—Colliding vessel, and not tow company, responsible for fault of captain of tugs in charge of colliding vessel.**

Where captain of tugs sent to move vessel from one slip to another, and who received pilot's fee, was on her bridge in command as she backed from slip under her own steam without line to dock, and collided with vessel on other side of slip, colliding vessel, and not towing company, *held* responsible for his fault in navigation.

**3. Shipping ☞28—Maritime lien impressed on vessel goes with it into whosesoever hands it may come.**

Collision impresses maritime lien on wrongdoing vessel, which goes with it into whosesoever hands it may come.

**4. Shipping ☞87—Maritime lien impressed on vessel causing damage is inchoate at moment of wrong, and must be perfected by subsequent proceedings.**

Maritime lien impressed on vessel causing damage is inchoate at moment of wrong, and must be perfected by subsequent proceedings.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by J. P. Clark against the steamship Helen, her engines, etc., claimed by the Bull Insular Steamship Company, and the steam tug White Ash, her engines, etc., claimed by the Ovens' Towboats, Incorporated, wherein the steam tugs W. S. Holbrook and others were impleaded. From a decree granting partial relief (288 F. 935), libelant appeals. Reversed in part, and affirmed in part.

Park & Mattison, of New York City (Samuel Park and Anthony V. Lynch, Jr., both of New York City, of counsel), for appellant.

Duncan & Mount, of New York City (Dudley C. Smith, of New York City, of counsel), for appellee Bull Insular S. S. Co.

Foley & Martin, of New York City (Wm. J. Martin and Geo. V. A. McCloskey, both of New York City, of counsel), for appellee Ovens' Towboats, Inc.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. The libelant was the owner of the coal boat J. P. Clark, which on March 22d was lying securely moored outside the coal boat Burns Bros. No. 20 on the north side of the pier at the foot of Adams street, Brooklyn. The steamship Helen, owned by the Bull Insular Steamship Company, was moored across the slip on the south side of the dock at the foot of Pearl street, Brooklyn, on the morning of that day. Between 12 and 1 o'clock p. m. on that date with the ebb tide running full strength, the Helen started backing out from her berth under her own steam. The influence of the tide and the failure of the Helen to hold a line on the dock caused her to swing across the slip and strike the Clark, doing considerable damage to her and to the Burns Bros. No. 20. The Holbrook Towing Line, Inc., was engaged by the owners of the Helen to shift the Helen from the Arbuckle Slip to South Fourth street, Brooklyn, and had in waiting for assistance four tugs with a captain in charge. The Holbrook Company's captain in charge was first sent to perform this work with two tugs, but was later assigned two additional tugs. The captain went aboard the bridge of the Helen and the steamer backed out of the slip under her own steam, with the two tugs waiting at the mouth of the slip under her starboard quarter to hold her up against the ebb tide. No line was held on the dock; all of the lines were let go. The captain testified that he received a pilot's fee of $5. At the time, the master of the Helen, the first officer, and the wheelsman were on the bridge of the Helen but the navigation was directed and in charge of the Holbrook's captain. The District Court dismissed the libel, holding in substance that the Holbrook's captain was not the agent of the owners of the Helen, but simply an employee of the Holbrook Towing Line which was an independent contractor and therefore declined to hold the tugs or vessel responsible in rem.

[1-4] The record disclosed that the tugs did not at any time come in contact or undertake the work of moving the vessel, and therefore there is no maritime lien impressed against the tugs which came to assist in this maneuver. That part of the decree which dismisses the libel as against the tugs is sus-

tained. But the decree entered against the Holbrook Towing Line should be reversed and a decree entered against the Helen. The Helen came in collision with the libelant's coal boat. It is quite clear that none of the tugs had as yet begun to exert any force on the Helen at the time of the collision, but were waiting in a position under the quarter of the ship while she was backing out under her own steam. It was while the Helen was thus navigated that the collision occurred. The defense that the master of one of the tugs was on the bridge in command is insufficient because he was acting as a pilot hired voluntarily by the owners of the Helen, and as to third parties the Helen is responsible for damages caused by fault in her navigation. The collision impressed upon the wrongdoing vessel a maritime lien. That lien, so impressed, goes with the vessel into whosesoever hands it may come. It is inchoate at the moment of the wrong, and must be perfected by subsequent proceedings. The China, 7 Wall. 53, 19 L. Ed. 67. This early decision has been followed as a guide since its pronouncement as illustrated in The Eugene F. Moran, 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600, where the Supreme Court said:

"The New York Central Railroad gets all its damages in any view, unless Sturgis v. Boyer, 24 How. 110, should be overruled. In that case it was held that a tug having control of a vessel in tow was solely responsible to a lighter upset by the vessel through the fault of the tug alone. * * *

"We see no reason why the decision should not stand. No doubt the fiction that a vessel may be a wrongdoer and may be held, although the owners are not personally responsible on principles of agency or otherwise, is carried further here than in England. The China, 7 Wall. 53; The Barnstable, 181 U. S. 464, 467, 468; Homer Ramsdell Transportation Co. v. La Compagnie Generale Transatlantique, 182 U. S. 406, 413, 414. See the Blackheath, 195 U. S. 361, 366. Possibly the survival of the fiction has been helped by the convenient security that it furnishes, just as no doubt the responsibility of a master for a servant's torts, that he has done his best to prevent, has been helped by the feeling that it was desirable to have some one who was able to pay. See Williamson v. Price, 4 Martin, N. S. 399, 401; Williams v. Jones, 3 H. & C. 256, 263. But after all a fiction is not a satisfactory ground for taking one man's property to satisfy another man's wrong,

and it should not be extended. There is a practical line and a difference in degree between the case where the harm is done by the mismanagement of the offending vessel and that where it is done by the mismanagement of another vessel to which the immediate but innocent instrument of harm is attached" (cases cited).

The vessel, in whosesoever hands she lawfully is, is herself considered as the wrongdoer, and is liable for the tort and subject to a maritime lien for the damages. Ralli v. Troop, 157 U. S. 402, 15 S. Ct. 657, 39 L. Ed. 742. In Homer Ramsdell Co. v. La Compagnie Gen. Trans., 182 U. S. 406, 21 S. Ct. 831, 45 L. Ed. 1155, the court said:

"The master of a ship, and the owner also, is liable for any injury done by the negligence of the crew employed in the ship. The same doctrine will apply to the case of a pilot, employed by the master or owner, by whose negligence any injury happens to a third person or his property; as, for example, by a collision with another ship, occasioned by his negligence. And it will make no difference in the case, that the pilot, if any is employed, is required to be a licensed pilot; provided the master is at liberty to take a pilot, or not, at his pleasure; for, in such a case, the master acts voluntarily, although he is necessarily required to select from a particular class."

This court, in The Maren Lee, 278 F. 918, held that a pilot in charge of a vessel whose negligent orders resulted in a collision was not a compulsory pilot, but one voluntarily accepted as the result of contract, and that the vessel was liable in rem. There the master of a tug was stationed on the deck of a schooner in tow, directing her course in an endeavor to make her follow another tug which was towing ahead. A tug which was made fast to the starboard quarter of a schooner was at fault for going stern when the schooner took a sheer to starboard which resulted in a collision. The tug was held liable in rem for the resulting damages through her master, who gave the wrong order and was acting as pilot for the schooner. There we said:

"He was not a compulsory pilot, but one voluntarily accepted as the result of contract. Wherefore, if he gave a wrong order, which caused or contributed to collision, the Cressy is liable as the offending res (Homer Ramsdell, etc., Co. v. La Compagnie Générale, 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155, and cases cited); whereas, if he gave a proper order (which we do not believe he did),

and that order was misunderstood by the ship's officers and/or the man at the wheel, the schooner is also liable, though for another reason."

In The Edward G. Murray, 278 F. 895, we held that the ship was responsible for the acts and omissions of the voluntary pilot guiding the ship for the injury done to person or property of third parties.

The cases relied on by the appellee are distinguishable. In Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591, the collision took place between a ship without motor power towed by a steam tug and a lighter propelled by oars. Thus the propelling power was furnished by the tug and it was held that unless the owner and person in charge of the vessel in some way sustain toward each other the relation of principal and agent, the injured party could not have his remedy against the colliding vessel.

In The Eugene Moran Case, 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600, the tug was moving the scows without motive power. They had no control of their own movements and the tug was held responsible for faulty navigation. In The John D. Rockefeller (C. C. A.) 272 F. 67, the steamer was in tow of two powerful tugs which entirely controlled her movements. The use of her own power was occasional, but did in no way contribute to the collision and she was held free from fault. In Wilmington Railway Bridge Co. v. Franco-Ottman Shipping Co., 259 F. 166, 170 C. C. A. 234, the ship employed a tug to tow her through a bridge, and while the tug master was on the steamer directing the navigation, struck and damaged the bridge. It was shown that the ship which brought about the collision was not at fault and the suit was dismissed against her owner. That suit was in personam. As pointed out in The Eugene F. Moran, supra, there is a practical line and a difference in degree between the case where the harm is done by the mismanagement of the offending vessel, and that where it is done by the mismanagement of another vessel to which the immediate but innocent instrument of harm is attached. Thus it has been consistently held that the vessel that comes into collision is considered the wrongdoer if there be fault in her navigation, and she is subject to maritime lien for damages irrespective of the question of agency and the liability does not depend upon the question of agency.

The decree dismissing the libel against the tug White Ash will be affirmed. A decree will be granted against the steamship Helen with costs. The District Court will enter a decree conforming with this opinion.

Reversed in part. Affirmed in part.