LOGUE STEVEDORING CORP. v. THE DALZELLANCE.

THE GRACE A. DALZELL.

THE JOSEPH ALSTON.

THE DERRICK NO. 2 et al.

United States District Court
S. D. New York.
May 18, 1951.

<div style="text-align:right">277</div>

<div style="page-break-after:always"></div>

by a sisal hawser from the Alston's bow, through her port chock abeam of No. 1 hatch and down to the bow bit of the tug. The stern line was paid out approximately 100 feet and the bow line approximately 40 feet. The captain of the bow tug, the Grace A. Dalzell, put his vessel in charge of his mate, boarded the Alston and took charge as pilot, on the Alston's wheelhouse bridge. The Master of the Alston was not aboard during the maneuver. The Alston's ranking officer present was the chief mate who remained in the pilot house and relayed to the engineroom, via telegraph signals, the tugmaster's instructions called to him from the wing of the bridge.

After the Alston's mooring lines were cast off, the tugs proceeded to draw her into the slip. The stern tug Dalzellance took the Alston's stern out first to approximately the center point of the slip between Pier 7 and pilings of abandoned Pier 8 to the south. Simultaneously, the bow tug Grace A. Dalzell placed herself across the bow of the Alston with her bow pointed diagonally toward the pilings of Pier 8 and proceeded to draw out the Alston's bow. The Alston's propeller was turning.

When the Alston was at a point diagonally across the slip, with her stern at approximately the center of the slip and her starboard bow quarter approximately 20 feet from the bow port corner of the nearer Logue Lighter No. 2, the Alston suddenly "jerked" shoreward. Both the deck and engine logs establish that the pilot ordered full speed ahead. The additional strain caused thereby resulted in the bow line parting at the Alston's chock. Thus, the Grace A. Dalzell lost control of the Alston's bow. The twenty-mile breeze then blowing, caught the Alston's forward port quarter and drifted her, before the bow line could be re-established, so that her starboard fetched up on the port bow corner of Logue Lighter No. 2. The bow tug's mate gave seasonable whistle signal to his captain aboard the Alston that their bow line had parted, but the Alston was not brought to a stop. By the time a line had been re-established from the ship's bow to the Grace A. Dalzell and under the undiminished pressure of the stern tug Dalzel-

<hr />

Foley & Martin, New York City, for libelant.

Burlingham, Veeder, Clark & Hupper, New York City, for claimant.

Irving H. Saypol, U. S. Atty., New York City, for United States of America.

SUGARMAN, District Judge.

Shortly before noon December 26th, 1945 the respondent's Liberty ship Joseph Alston was moored, bow shoreward, to the south side of Pier 7, Communipaw, New Jersey. Approximately 125 feet astern of the Alston and similarly moored was libelant's Logue Lighter No. 2. Approximately 100 feet astern of Logue Lighter No. 2, and moored to the same side of said pier, was libelant's Logue Lighter No. 6, but, with her stern shoreward and bow streamward.

Between 11:00 A. M. and 12:00 noon the claimant's tugs Dalzellance and Grace A. Dalzell proceeded into the slip, commissioned to assist the Alston, under her own power, from said pier to Pier 34, North River, New York side. The Dalzellance took the stern of the Alston by a line from the ship's stern to the stern of the tug. The Grace A. Dalzell took the bow of the Alston

lance which continued unabated to draw the Alston streamward, she fetched up starboard side on the starboard portion of the other Logue Lighter No. 6.

 The preponderance of credible proof indicates that the line originally established between the Alston's bow and the bow of the tug Grace A. Dalzell was in reasonably good condition. It was immediately reused to re-establish the tie between the Alston's bow and the bow of the Grace A. Dalzell after it originally parted. The parting of the line can be attributed to but one cause, i. e., the unexplained sudden forward movement of the Alston, under her own power and the resultant additional strain placed on the hawser. The Alston's impacts upon both lighters were no mere harbor bumps or brushes. They were of sufficient force to part both lighters' mooring lines and to splinter the stout hull timbers of each lighter.

The record reveals nought that permits of a conclusion other than that claimant Dalzell was an independent contractor commissioned by respondent to move its vessel from Communipaw to New York by the combined use of her own power and the claimant's tugs and command. This, the more so, in the absence of the Alston's master and the exercise of complete dominion over the operation by the master of the tug Grace A. Dalzell. As such independent contractor, claimant cannot escape liability for damages for injury inflicted upon libelant, a third party, by asserting as against such libelant its pilotage agreement with respondent United States of America. Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, S. A., 1933, 261 N.Y. 455, 185 N.E. 698.

The pilotage agreement between claimant and respondent provided "When the captain of any tug furnished to or engaged in the service of assisting a vessel which is making use of her own propelling power, goes on board such vessel, or any other licensed pilot goes on board such vessel, it is understood and agreed that such tugboat captain or licensed pilot becomes the servant of the owner of the vessel assisted in respect to the giving of orders to any of the tugs furnished to or engaged in the assisting service and in respect to the handling of such vessel, and neither those furnishing the tugs and/or pilot nor the tugs, their owners, agents, charterers, operators or managers shall be liable for any damage resulting therefrom."

Accordingly, libelant Logue Stevedoring Corporation is entitled to a recovery against claimant Lloyd H. Dalzell, managing owner of steamtugs Dalzellance and Grace A. Dalzell, and respondent United States of America is entitled to a dismissal of the libel herein as against it with costs.

This suit cannot determine, nor is any opinion expressed upon claimant Dalzell's right to indemnity under the pilotage agreement against respondent United States of America. Moran Towing & Transportation Co., Inc., v. Navigazione Libera Triestina, S. A., 2 Cir., 1937, 92 F.2d 37, certiorari denied, 1937, 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575.

If this opinion is not deemed to be a sufficient compliance with General Admiralty Rule 46½, 28 U.S.C.A., counsel may submit proposed findings of fact and conclusions of law in accordance herewith and Rule 43 of the Admiralty Rules of this district.