LOGUE STEVEDORING CORP. v. THE DALZELLANCE.

THE GRACE A. DALZELL.

THE LLOYD H. DALZELL.

THE JOSEPH ALSTON.

No. 242, Docket 22326.

United States Court of Appeals
Second Circuit.

July 9, 1952.

Clark Circuit Judge, dissented.

Foley & Martin, New York City (Christopher E. Heckman and Edward J. Ryan, New York City, of counsel), for libellant-appellant.

Burlingham, Veeder, Clark & Hupper, New York City (Stanley R. Wright, New York City, of counsel), for Lloyd H. Dalzell, appellant.

Myles J. Lane, U. S. Atty., New York City (Eugene Rheinfrank, Atty., Department of Justice, New York City, of counsel), for appellee.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

SWAN, Chief Judge.

This is a libel *in rem* in admiralty to recover damages sustained by the libellant's Derrick No. 2 and Derrick No. 6 with which the steamship Joseph Alston collided during an undocking operation in which the steamer was assisted by the tugs Dalzellance and Grace A. Dalzell. The Joseph Alston was a merchant vessel owned and operated by the United States. On December 26, 1945 she was lying moored, bow in, on the south side of Pier 7, Communipaw, New Jersey. About 125 feet astern of her was moored Derrick No. 2 and astern of No. 2, about 100 feet distant, was Derrick No. 6. The tug Dalzellance took a hawser from the ship's stern and the tug Grace A. Dalzell a hawser from the ship's bow to assist her from the slip, and Captain Finley of the bow tug went aboard the Alston to act as undocking pilot. When the Alston was diagonally across the slip with her stern at approximately the center of the slip and her starboard bow quarter about 20 feet from the bow port corner of Derrick No. 2, the Alston suddenly "jerked shoreward." The pilot ordered full speed ahead and the additional strain caused thereby resulted in the parting of the bow hawser. The trial court found that "The parting of the line can be attributed to but one cause, *i. e.*, the unexplained sudden forward movement of the Alston under her own power and the resultant additional strain on the hawser." He also found that the line was "in reasonably good condition." Before the Grace A. Dalzell could regain control of the Alston's bow, the 20 mile wind drifted her against

the port bow corner of the No. 2, and by the time a line had been reestablished from the ship's bow to the bow tug, the Alston, being moved streamward by the stern tug, fetched up against the side of Derrick No. 6. Each derrick sustained damage without fault on its part.

The libel was filed against the tugs and the United States, with an allegation that the libellant "elects to have this cause proceed in accordance with the principles of libel *in rem* and desires also to seek relief *in personam*." The district court granted an interlocutory decree against the claimant of the tugs, Lloyd H. Dalzell, dismissed the libel against the United States and made no disposition of the libel against the tugs. 98 F.Supp. 276. A motion by the claimant for reargument was granted but the former opinion was adhered to. The claimant then moved for leave to amend his answers to plead that by the terms of the contract under which the services of the assisting tugs were furnished he is entitled to recover from the United States by way of indemnity any sum he may be required to pay because of any default of the undocking pilot. This motion was denied in a supplemental opinion (not officially reported). The libellant and the claimant have appealed from the interlocutory decree.

■ The United States has devoted most of its argument to the contention that the court erred in finding that the bow hawser was in good condition and broke because of the strain put upon it by the forward motion of the ship under her own power. In the case of In re Lee Transit Corporation, 2 Cir., 37 F.2d 67, we said that an appellee who has filed no assignment of errors is concluded by the court's findings. And Rule 13 of this court expressly requires an assignment of error "if the appellee desires other or different relief than that granted by the decree." The rule, however, is not inexorable where justice demands that it be not applied. Schiavone-Bonomo Corp. v.

Buffalo Barge Towing Co., 2 Cir., 134 F.2d 1022, certiorari denied 320 U.S. 749, 64 S.Ct. 53, 88 L.Ed. 445. We may assume *arguendo* that neither the cited case nor Rule 13 precludes an appellee who has filed no assignment from arguing that a decree in its favor should be sustained for reasons other than those relied upon by the court below, even though the argument involves an attack upon some of the Court's findings of fact. But the appellee's attack upon the findings as to the condition of the rope and the cause of its breaking do not persuade us that they are "clearly erroneous." Hence we must accept them.

■ There is no finding indicating that either of the assisting tugs was in any way at fault. The fact that the captain of the Grace A. Dalzell went aboard the ship to act as undocking pilot and committed a fault in her navigation imposes no liability on either of the tugs, as this court has held several times.[1] Captain Finley gave no erroneous order to either tug; his fault was in ordering ahead the ship's engines, and this fault, in respect to third parties injured thereby, is imputable to the Alston, not to the tugs. A decree dismissing the libel against the tugs should have been entered.

■ Relying upon a pilotage agreement between the United States and Dalzell Towing Company, which was not a party to the suit, the district court concluded "that claimant Dalzell was an independent contractor commissioned by respondent to move its vessel from Communipaw to New York by the combined use of her own power and the claimant's tugs and command." This conclusion led to the imposition of personal liability on the claimant and to the exoneration of the Alston. Exoneration of the ship and dismissal of the libel against the United States was erroneous. Even in the case of a compulsory pilot the ship is liable *in rem* for a collision resulting from the pilot's fault.[2] *A fortiori* should this be true when the pilot is voluntarily employed as in the

1. The Sarnia, 2 Cir., 261 F. 900, 901; The Coamo, 2 Cir., 267 F. 686, 688; The Helen, 2 Cir., 5 F.2d 54, 55–56; The Niels R. Finsen, D.C.S.D.N.Y., 52 F.2d 795, 797–798. See also The W. L. Steed, 2 Cir., 79 F.2d 2, 5, cert. denied sub nom.

John E. Moore Co. v. Pan American Petroleum & Transport Co., 297 U.S. 708, 56 S.Ct. 500, 80 L.Ed. 995.

2. The China, 7 Wall. 53, 74 U.S. 53, 67–68, 19 L.Ed. 67; See The Barnstable, 181 U.S. 464, 467, 21 S.Ct. 684, 45 L.Ed.

case at bar.[3] As this court said in The Helen, 2 Cir., 5 F.2d 54, 55:

"The defense that the master of one of the tugs was on the bridge in command is insufficient because he was acting as a pilot hired voluntarily by the owners of the Helen, and as to third parties the Helen is responsible for damages caused by fault in her navigation. The collision impressed upon the wrongdoing vessel a maritime lien."

The decree against the claimant of the tugs must also be reversed because the court had no personal jurisdiction over him. The libel is *in rem* against the two tugs and the Alston. The libellant's allegation that it "desires also to seek relief *in personam*" is effective as against the United States.[4] It does not convert the libel against the tugs into an *in personam* suit against their claimant. On what theory the contract between the United States and Dalzell Towing Company, not a party to the suit, was received in evidence is not apparent. The Towing Company used the tugs in performing its contract but no evidence was offered to show what arrangements the Towing Company had made with their claimant, or that his relation to it was such that he was subject to the same contractual obligations as the Towing Company. Nor does it appear that Captain Finley was an employee of the claimant; hence his negligence cannot be imputed to the claimant. He entered the action only to claim the tugs and to answer the libel in order to protect his interest in them. This does not give the court personal jurisdiction over him. The ordinary practice in admiralty does not permit a personal judgment to be entered upon a mere libel *in rem*.[5] In certain cases amendments which added an *in personam* cause against a claimant to an *in rem* proceeding against the vessel have been permitted. Thus in The Minnetonka, 2 Cir., 146 F. 509, when the libellant by mistake underestimated the amount of her loss this court allowed amendment to permit recovery against the claimant for the amount of her loss over the value of the bond. In The Monte A., D.C.S.D.N.Y., 12 F. 331, an action *in rem* against a vessel for breach of a wholly executory charter party contract, the owner appeared and defended on the merits. The libel was dismissed, but without prejudice to an application by libellant within ten days to amend the libel by praying judgment against the owner, and after due service upon him or his voluntary appearance, the cause was to be heard on the proofs which had already been presented, and any additional proofs necessary. See also The Susquehanna, 2 Cir., 267 F. 811. In these cases the court noted that the amendment involved "the introduction of no new facts or change in the cause of action.",[6] or as Judge Brown said in The Monte A.,[7] "The pleadings in this case contain all the requisite allegations for the full hearing and determination upon the merits of the owner's liability as in a suit *in personam*. The only thing wanting is a prayer in the libel for a monition and personal judgment against him. An amendment to this effect is no change in the substantial cause of action, but only in the relief demanded." Such is not the case here. The libellant neither needs nor seeks an amendment of its libel; the *in rem* liability of the Alston is adequate to satisfy the libellant's claim for damage to its derricks without re-

954; The Eugene F. Moran, 212 U.S. 466, 474, 29 S.Ct. 339, 53 L.Ed. 600; Canadian Aviator, Ltd. v. U. S., 324 U.S. 215, 224, 65 S.Ct. 639, 89 L.Ed. 901; cf. Homer Ramsdell Transportation Co. v. Comp. Gen. Trans., 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155 (suit at common law).

3. The Helen, 2 Cir., 5 F.2d 54, 55; The Maren Lee, 2 Cir., 278 F. 918, 920; The Niels R. Finsen, D.C.S.D.N.Y., 52 F.2d 795, 798; cf. The Eugene F. Moran, 212 U.S. 466, 474, 29 S.Ct. 339, 53 L.Ed. 600.

4. Eastern Transportation Co. v. U. S., 272 U.S. 675, 690, 47 S.Ct. 289, 71 L.Ed. 472.

5. The Chickie, 3 Cir., 141 F.2d 80, 85–86; The Monte A., D.C.S.D.N.Y., 12 F. 331, 333–336; The Ethel, 5 Cir., 66 F. 340; The Nora, D.C.S.D.Fla., 181 F. 845; The City of Singapore, D.C.S.D.N.Y., 68 F.Supp. 164, 165.

6. The Minnetonka, 2 Cir., 146 F. 509, 515.

7. 12 F. 331, 337.

gard to the personal liability of the claimant. The answer of the United States asserted no personal liability on the part of the claimant and no request was made to amend the answer. Indeed, in opposing the claimant's motion, made after the district court's opinion imposing personal liability, to permit an amendment of the claimant's answers in order to plead the pilotage contract and establish a right to indemnity, the United States contended that such contract was irrelevant to the issues made by the pleadings and would introduce a new cause of action already barred by the two year limitation of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. Whether the claimant was personally liable for the libellant's damages is a question entirely extraneous to the issues litigated, namely, whether the ship and/or the tugs had committed maritime torts which subjected them to *in rem* liability. It would be an obvious injustice to impose personal liability when that issue was not raised by the pleadings and at a date so late that the statute of limitations may have barred any right which the claimant may have had to obtain indemnity from the United States. See Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311.

For the foregoing reasons the decree must be reversed and the cause remanded with directions to dismiss the libel against the tugs and to enter a decree against the United States in favor of the libellant. The appellants are awarded appellate costs.

CLARK, Circuit Judge (dissenting).

This case seems to have bogged down in a welter of procedural technicalities. Latterly, at least, we have more and more reached the merits of admiralty and civil cases alike, through uniformly applying the civil rules, in both form and spirit, by analogy or comity or common sense. If such a course is actually impossible here, then we

have an effective demonstration of a crying need for reform in the admiralty practice. But I am not yet persuaded that the situation has become quite as acute as the opinion herewith tends to suggest.

Cutting through the procedure the case seems a relatively simple one with the equities fairly clear. A towing concern was hired to undock a vessel. Its representatives did so, so poorly that two bystanding barges were injured. So it (through some one of its appropriate entities) should pay the damage it has so clearly caused. The trial judge accurately sensed where justice pointed and took a short cut (which should have been unnecessary had the case been better presented) to the indicated goal. Perhaps his short cut was too short; I apprehend that for the fuller consideration of various matters, such as the claimed contract of indemnity,[1] a remand and further trial would be desirable. But the abrupt reversal for a definitive decree against the owner of the vessel and essential exoneration of those actually causing the damage seems to me a miscarriage of justice to which we should never be, and here are not actually, forced by any procedural dilemma.

Behind a procedural ruling there usually lurks some problem of substantive law partially concealed by the underbrush. So here the opinion does rely upon a substantive principle which, restrained and canalized, has its proper field of operation, but, as announced without limitation, and without even reference to a persuasive line of authorities appropriately delimiting it, will, I am sure, plague us later as it commits us to inequity here. The principle is well stated in the quotation above from The Helen, 2 Cir., 5 F.2d 54, 55, here restated with my own emphasis added, to the effect that the Helen's defense that the master of a tug was on the bridge in command "is insufficient because he was *acting as a pilot hired*

1. Were that issue to be thoroughly explored, it would, I expect, raise questions beyond those already suggested as to the timeliness of the claim of indemnity and the binding force of the contract upon the present parties, to the point whether a "pilotage" clause was applicable to the situation at all. I add that respondent's suggestion that this defense would have been barred by a statute of limitations has been more readily accepted by my brethren than I should have thought justified in the absence of a trial; does not indemnity usually obtain when payment is made?

*voluntarily* by the owners of the Helen, and *as to third parties* the Helen is responsible for damages caused by fault in her navigation." Just so. If a shipowner hires a tugboat captain to pilot his vessel up and down New York Harbor, it should be liable for the damage caused others; in The Helen, supra, the owners even paid the pilot directly. But that is quite unreal as applied to a situation where a towing concern is hired as an independent contractor to undock a ship, and the tugboat captain, for greater facility in directing the operation, steps over to the bridge of the vessel and makes his mistake there. Following the general theory of liability of a tug with tow to third parties for misnavigation settled by Sturgis v. Boyer, 24 How. 110, 65 U.S. 110, 16 L.Ed. 591, the Fourth Circuit in a series of notable decisions ruled that when the master of a tug under a contract to undock a ship boards the latter, the better to supervise the operation, and there commits his error, it is still the tug, and not the ship, which is liable. The Dorset, 4 Cir., 260 F. 32; The John D. Rockefeller, 4 Cir., 272 F. 67, certiorari denied 256 U.S. 693, 41 S.Ct. 535, 65 L.Ed. 1175; Calzavaro v. Planet S. S. Corp., 4 Cir., 31 F.2d 885.

This salutary doctrine seems most recently stated and applied by the Third Circuit in a carefully reasoned opinion in Publicker Industries v. Tugboat Neptune Co., 3 Cir., 171 F.2d 48. The decision is the more important since it overrode several counter-arguments of the kind here put forth: a "pilotage clause" for indemnity under the contract, a Pennsylvania doctrine of "temporary agency," and a possible or potential residuum of command in the ship's captain (the latter being less likely here, since the Alston's master was not even on the ship at the time). As Judge Maris well says, 171 F.2d at page 50: "We do not question the rule of Pennsylvania law which the appellants invoke with respect to the non-liability of an employer for negligent acts of his employee committed while the latter has been loaned to another employer but we find the rule not to be applicable here. For in this case the court was justified by the evidence in finding, as it did, that Captain Marvel of the Neptune directed the undocking operation, giving all the orders involved except for the original casting off of the Worth, and that he and not Captain Ryder of the Worth was in general charge of the undocking operation. It thus appears that Captain Marvel was not loaned by the Tugboat Neptune Company to the Worth and did not come under authority of Captain Ryder of that vessel or become its employee for the time. On the contrary it is settled that under the circumstances present here the relation of the two tugboat companies to the Worth and its owner was that of independent contractors." And significantly his supporting citations are Sturgis v. Boyer, The Dorset, and Calzavaro v. Planet S. S. Corp., all supra, as well as Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 261 N.Y. 455, 185 N.E. 698.[2]

The very principle here so succinctly defined, that of the liability of the independent contractor, has, in fact, been accepted by this court in a decision on rehearing modifying an earlier ruling to hold the towing company solely liable without recovery over against a charterer. The West Eldara, 2 Cir., 104 F.2d 670, 671, certiorari denied McAllister Towing & Transportation Co. v. American Diamond Lines, 308 U.S. 607, 60 S.Ct. 144, 84 L.Ed. 507, which notably cites and relies on, *inter alia,* Sturgis v. Boyer, and The Dorset, both supra. Indeed only the other day we cited and relied again on Sturgis v. Boyer, in Compania Maritima Samsoc Limitada, S.A., v. Moran Towing & Transportation Co., 2 Cir., 197 F.2d 607. The applicability of the principle is most clear here, since it is what the trial judge went upon, after making careful findings.

2. This last case is the one particularly relied on below; it states clearly and enforces the principle of the towing concern as the independent contractor. Its authority in that regard is not impugned by the fact that this court later allowed recovery over on a contract of indemnity.

Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A., 2 Cir., 92 F.2d 37, certiorari denied Navigazione Libera Triestina, S. A. v. Moran Towing & Transportation Co., 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575.

that the master of the Alston was not on the vessel, and the towers were independent contractors. *Inter alia,* the opinion herewith must, it seems, be taken as a repudiation—by implication at least—of these clear findings of fact and resulting conclusions of law.

It seems to me clear, therefore, that the authorities do not permit a decree against the United States as the owner of the Alston. And if the procedural difficulties in reaching those properly liable are insurmountable, then the libel should be dismissed and the libellant left to seek his remedies elsewhere, if he wishes such remedies. (Libellant and claimant appear, however, to have reached some mutual agreement; this odd alliance was not the least of the curiosities of this case.) But for my part I do not think the admiralty is thus restricted in its power to do complete justice. The Fourth Circuit cases cited above have had no difficulty in finding the tug responsible where its master directing the operations is thus at fault. See, e. g., The Dorset, supra. That, I suggest, is sensible and reasonable. The reification of a ship into a personality, however unreal, is at least a useful device; but there is nothing inherent in it that requires us to say that a tug tied to its tow loses its identity when its misnavigating master steps from tug to tow for better observation and that the personification of the wrongdoer necessarily then moves to the ship, too. Here I think it would be only common sense to hold the Grace B. Dalzell for the fault of its master, Captain Finley, wherever he has for the moment stepped.

But I see nothing erroneous, only a direct and realistic judicial act, in the action of the trial judge in entering judgment against the claimant. True, there may be situations where the claimant has some appropriate defense or where his liability should be limited to the value of the ship. But where nothing of that kind intervenes or is even suggested, procedural realities applaud the course here taken. Such, as I understand it, is the direct holding of Mosher v. Tate, 9 Cir., 182 F.2d 475, approved in an informed and understanding note in 64 Harv.L. Rev. 164. Nor do I see anything in our own opinions which prevents this straightfor-

ward course. In fact, the opinion herewith seems to me to concede as much in its discussion of the amendments we have allowed in early cases. Here the one cause of action is the accident and the case should be tried to exhaust the rights therefrom flowing. If amendments be needed, the case may be returned therefor, if indeed it is not fully settled under F.R. 15(b), "Amendments to Conform to the Evidence," which we have held applicable in admiralty. See Judge Chase's opinion in The Roslyn, 2 Cir., 93 F. 2d 278; also Fyfe v. Pan-Atlantic S. S. Corp., 2 Cir., 114 F.2d 72, 75, certiorari denied Pan-Atlantic S. S. Corp. v. Fyfe, 311 U.S. 711, 61 S.Ct. 319, 85 L.Ed. 462; Menefee v. W. R. Chamberlin Co., 9 Cir., 183 F. 2d 720. The suggestion that the power of amendment is now to be in some way restricted seems indeed unfortunate, going against the civil rules of amendment, F.R. 15 generally, which I had thought settled for use in admiralty, as these cases show. And see also Hughes v. Roosevelt, 2 Cir., 107 F.2d 901. And if a remand were to be had, opportunity well might be accorded the Dalzell Towing Company to appear and thus clear up any possible difficulties as to separate or separable towing entities.

Had this been the case of an *appellant* who had failed to seek amendment in time, the doctrine of the opinion, though harsh, could be understood. But affording no such opportunity to an *appellee,* who had no occasion to seek amendment from a judge who thought its pleadings fully adequate— not even to sustain a just judgment—seems to me most unusual. I am bound to add, however, that I find the position of my brethren confusing, if not conflicting. The earlier part of the opinion is devoted to a statement of the rule deduced from The Helen, supra, *where the tug was exonerated.* No room appeared to be left to hold the tug owner in any way; the pilot was simply not working for the latter at the time. And the contrast was pointed up by the line of cases cited above by me, but not referred to at all in the opinion, significantly expressed in, *inter alia,* our own case of The West Eldara, supra, distinctly holding only the tug as independent contractor, and not the vessel at all. Thus I should have assumed from

this part of the opinion that no liability upon the part of the claimant here was ever to be recognized. Yet the implication from the latter part of the opinion is that respondent United States might recover from the claimant somewhere else, though for what and on what basis or whether primarily, secondarily, or otherwise is not shown. Holding the Alston at all seems to me a grave fault of substantive law; not holding the claimant is that, if exoneration is absolute; but if exoneration is only temporary, it is, even more, a rigidity of procedure not consistent with modern enlightened judicial custom.[3]

Thus the evil of our decision will, I fear, live beyond this situation and these parties to tie our admiralty practice up in undesirable knots.

---

3. While I make no argument that the findings below should be changed, I should like to make it clear that I think appellee quite entitled to sustain its decree by attacking the findings if so advised. Our Rule 13 clearly does not prevent it, since that applies only where the appellee desires other or different *relief* than he obtained. As to In re Lee Transit Corp., 2 Cir., 37 F.2d 67, that contains merely an offhand remark, the intended extent of which is not clear, without citation of authority; and it has never been cited since to the point. It should not be accepted as authority for appellants' harsh contention.