## THE MINNETONKA.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

### No. 215.

1. SHIPPING—THEFT OF JEWELRY FROM PASSENGER BY EMPLOYÉ OF SHIP.

Evidence *held* to sustain a finding that jewelry belonging to libelant was stolen from her stateroom while she was a passenger on a transatlantic steamship by an employé of the ship.

2. SAME—LIMITATION OF LIABILITY—VALIDITY OF CONDITIONS IN TICKET.

Conditions printed inconspicuously upon a steamship ticket, providing that the shipowner shall not be liable for any loss of the passenger's baggage through theft, or any act, neglect, or default of the shipowner's servants or others, which were not known to the passenger nor called to his attention are invalid, and constitute no defense to an action by the passenger to recover for the loss of jewelry stolen by one of the ship's employés.

3. SAME—STATUTORY EXEMPTION FROM LIABILITY.

Rev. St. § 4281 [U. S. Comp. St. 1901, p. 2942], providing that, if any shipper of jewelry, etc., contained in any parcel or package or trunk shall take the same as freight or baggage on any vessel without giving written notice of its character and value, and having the same entered on the bill of lading, the shipowner shall not be liable as carrier, is intended to apply where such goods are received from a shipper by a carrier for transportation in the usual course of business, and does not relieve a shipowner from liability for jewelry worn and carried on board by a woman passenger with the intention of placing it in the custody of the purser, as permitted by the rules of the ship, but which was stolen by an employé of the ship before she had the opportunity to do so.

4. SAME—GENERAL LIABILITY FOR TORTS OF EMPLOYÉ.

A shipowner is liable to a passenger for the value of jewelry stolen during the voyage by a steward employed to perform duties which the carrier owed to the passenger under the contract of carriage.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 554.]

5. SAME—CONTRIBUTORY NEGLIGENCE.

Where a steamship passenger had not retired for the night, and a light was burning in her stateroom, she was not chargeable with contributory negligence for a theft therefrom because of leaving the door partially open for ventilation, and fastened only by a hook provided by the vessel for the purpose.

6. SAME—NOTICE OF CLAIM.

Where a steamship was docked on completion of her voyage at 2 p. m., a notice of loss of effects by theft, mailed by a passenger at the same place at 5:30 p. m. on the second day thereafter, was a substantial compliance with a condition of the ticket requiring notice of claim to be given within 48 hours, especially where the facts of the loss were fully known to the officers of the vessel before the termination of the voyage.

7. ADMIRALTY—AMENDMENT OF LIBEL—UNDERSTATEMENT OF AMOUNT OF DAMAGES.

In a libel by a passenger against the ship to recover the value of jewelry stolen by an employé on the voyage, the value of the jewelry was stated at $5,000, and the ship was bonded for that sum. Such statement was based on the cost of the articles several years before. Upon a reference the value of the jewelry was fully gone into, and the commissioner found upon the undisputed testimony of an expert who was familiar with the jewels that their present value was in excess of $7,000. Held, that the court had power to permit an amendment of the libel to conform to the proof, and to render a decree in personam against the claimant for the excess.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 533.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a decree in favor of Frances M. Barnes, libelant, and against the Minnetonka, for damages sustained by her by reason of the loss of her jewelry, which was, as she alleges, stolen from her while a passenger on the steamship by one or more of the stewards in the employ of the claimant, the Atlantic Transport Company. The decree was against the Minnetonka in rem in the sum of $5,000 damages and $237.90 costs, and against claimant in personam for the sum of $2,139.70. In the libel the value of the jewelry was stated as exceeding $5,000. In reply to a question asking the libelant to give the value of the articles, the libelant gave their value in detail; the aggregate being $5,151.50. The stipulation for value and bond in the sum of $5,000 was given, without objection by the libelant. On the reference the libelant produced an expert jeweler who placed the value at $2,139.70 in excess of the amount of the bonds and stipulations for value and costs, and the court awarded judgment for the excess against the claimant.

The opinion of the District Court will be found in 132 Fed. 52.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

J. Parker Kirlin, for appellant.
Louis H. Porter, for appellee.

COXE, Circuit Judge. The salient facts are stated in the opinion of the district judge; these need not be repeated.

The question whether the jewelry was stolen by an employé of the ship alone or with the connivance of another employé was one of fact,

and as the trial judge had the advantage of seeing the witnesses, this finding should not be disturbed unless clearly against the weight of testimony. The judge says expressly that he was favorably impressed with the demeanor of the libelant and her niece, and on the contrary the stewards, to whom suspicion pointed, did not make a favorable impression upon the stand. The opportunity of seeing and hearing the witnesses, especially in a case of this character, involving as it does a charge of larceny, gives to the trial court an advantage which can hardly be overestimated. The judge found that the libelant was robbed "as she contends, and probably by one of the stewards. Apparently, no one but Betts knew of the libelant's possession of the valuables, and there seems to be no way of accounting for their disappearance except by supposing that he carried them off, perhaps with the connivance of Phillips."

The reasons which induce us to believe that this finding is correct may be briefly stated as follows: First. That the libelant owned the jewels in question and that they were stolen from her stateroom shortly after 2 o'clock a. m. on the first night she was aboard the Minnetonka is too well established to admit of doubt. Second. Betts was the steward assigned to her stateroom; he had knowledge of the jewels, having seen them deposited in the rack above her berth; he also knew that she was making efforts to deposit the jewels with the purser for safekeeping and had agreed to inform her when the purser was in his room and ready to receive them. There was then a concurrence of knowledge and opportunity. The testimony makes it clear that the situation in all its aspects was known to Betts and to no one else on the steamer. He alone knew that the moment the libelant was put in communication with the purser the chance to take the jewels would be lost. Third. No suspicion attached to any of the passengers. Indeed, if it were shown that the existence of the jewels was known to a passenger the circumstances were such that a theft by him without the knowledge of the employés of the steamer was practically impossible. Fourth. The bag of jewels was taken by some one wearing the uniform of a steward, with brass buttons on the coat or waistcoat; he knew exactly what he wanted; he spent no time in searching for valuables among the articles in the room, but reached over the libelant, seized the bag and in a moment was out of the room. Fifth. It is quite possible that Betts had a confederate in the steward Phillips. The account of what occurred after of the transaction given by Phillips is so hopelessly at variance with the testimony of the other witnesses, including the captain and purser, as to raise a strong presumption that if not an actual participant he knew of the robbery and was endeavoring to protect the robber by delaying an investigation until sufficient time had elapsed to enable him to conceal the jewelry. Sixth. It is, of course, immaterial whether the robbery was the work of Betts or Phillips or both. It is enough that the jewels were taken by an employé of the ship.

The libelant insisted at all times that she was robbed by a steward. On this point she has been consistent throughout. The district judge has so found and we think his conclusion is fully sustained by the proofs.

The conditions on the back of the contract ticket, so far as they relate to the matters in controversy, are quoted in the opinion below. They were printed in agate type, in double columns, and so compactly as to be almost illegible to one whose sight was at all imperfect. The claimant's agent of whom the libelant purchased the ticket did not call her attention to the indorsements or ask her to read them, and she did not, in fact, read them. Assuming that these conditions are applicable to personal jewelry taken on board by the owner, with the intention of depositing it with the purser for safekeeping, we are, nevertheless, of the opinion that they do not constitute a defense to the present action, for the reason that they were not known to the libelant. This proposition is amply sustained by the Supreme Court in The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039, and in The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190. See, also, La Bourgogne (decided by this court February 22, 1906) 144 Fed. 781.

We concur with the District Court in thinking that section 4281 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 2942] is inapplicable to the present controversy. So far as it relates to the facts in hand, this statute provides that if any shipper of jewelry, money, diamonds or other precious stones "contained in any parcel or package or trunk, shall lade the same as freight or baggage, on any vessel, without at the time of such lading giving to the master, clerk, agent or owner of such vessel receiving the same, a written notice of the true character and value thereof, and having the same entered on the bill of lading therefor, the master and owner of such vessel shall not be liable as carriers thereof in any form or manner; nor shall any such master or owner be liable for any such goods beyond the value and according to the character thereof, so notified and entered." It will be noticed that in order to bring the exemption of this statute into operation the following conditions must exist: First. The libelant must have been a shipper. Second. The jewelry, etc., must have been contained in a parcel, package or trunk. Third. The parcel, package or trunk must have been laded as freight or baggage on the vessel. Fourth. An agent of the vessel must have received the same. Fifth. the libelant must have failed at the time of lading to give a written notice to the agent of the character and value of the jewelry and must have neglected to have the character and value entered on the bill of lading.

If, then, the libelant, as shipper, had loaded the jewelry as freight or baggage and had failed to give the required notice, the master and owner of the Minnetonka would not be liable as carriers, but their liability in other respects would have remained unchanged. The Court of Appeals of New York construed this statute in Wheeler v. O. S. N. Co., 125 N. Y. 155, 26 N. E. 248, 21 Am. St. Rep. 729, and this court, concurring in that decision, held in La Bourgogne, supra, that the statute was intended to remove the liability of the master and owner as carriers, leaving other and lesser liabilities unaffected.

The relation of shipper and carrier did not exist between the libelant and the claimant so far as the jewelry was concerned. It was not contained in a parcel, package or trunk, nor did she lade or intend to lade

it as freight or baggage. Most of it she wore on her person when she came aboard, expecting to deposit it with the purser for safekeeping, as she was invited, or, at least, permitted, to do by the vessel's rules posted in her stateroom. Indeed, had she been able to find the purser, she might, by paying an extra rate, have secured complete indemnity. It seems to us quite plain that the object of this statute was to prevent fraudulent and exaggerated claims, by prohibiting a recovery from a carrier of goods for the exceedingly valuable articles mentioned, unless at the time of loading written notice of the value be given and entered on the bill of lading. The reasons for such a limitation of liability are obvious, but it is difficult to perceive how they apply to the case of a passenger whose jewelry has been stolen from her stateroom by one of the ship's crew before she had had an opportunity to deposit it with the proper officer for safekeeping. In other words, we think the statute was intended to apply to cases where goods, wares and merchandise are received from a shipper by a carrier for transportation in the usual course of business and that it was not intended to limit the liability of a carrier of passengers under such conditions as are shown by the proof.

The liability of the vessel for the willful torts of its own servants committed upon a passenger during the voyage is well established. In Steamboat Co. v. Brockett, 121 U. S. 637, 645, 7 Sup. Ct. 1039, 1041, 30 L. Ed. 1049, the Supreme Court says:

"The plaintiff was entitled, in virtue of the contract for safe transportation, to protection against the misconduct or negligence of the carrier's servants. Their misconduct or negligence whilst transacting the company's business, and when acting within the general scope of their employment, is, of necessity, to be imputed to the corporation, which constituted them agents for the performance of its contract with the passenger."

The archaic doctrine that the moment a servant of a carrier commits a wanton assault upon a passenger he acts outside of the scope of his authority and thus releases his employer from liability was long ago renounced by the great preponderance of authority. Pushed to its logical conclusion it led to such deplorable results as are typified by the case of Isaacs v. The Third Ave. R. R., 47 N. Y. 122, 7 Am. Rep. 418, where a passenger who was hurled from the platform of a moving car by the conductor was denied the right to recover for a broken leg and other injuries because the conductor was not in the performance of any duty required by the railroad company at the time. But the doctrine of the Isaacs Case was repudiated by the court nearly a quarter of a century ago in Stewart v. Brooklyn R. R., 90 N. Y. 588, 43 Am. Rep. 185, where the court says:

"By the defendant's contract with the plaintiff, it had undertaken to carry him safely and to treat him respectfully; and while a common carrier does not undertake to insure against injury from every possible danger, he does not undertake to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger."

To demonstrate the absurdity of the contrary rule the court uses the following illustration:

"If the porter of a sleeping car, employed to guard the car while the passengers sleep, should himself fall asleep or, abandoning his post, allow a pickpocket to enter and rob the passengers, the company would be liable, but if the guardian should himself turn pickpocket, and rifle the pockets of the passengers, the company would not be responsible for his acts. The carrier selects his own servants and agents, and, we think, he must be held to warrant that they are trustworthy as well as skillful and competent."

See, also, Pendleton v. Kinsley, 3 Cliff. 416, Fed. Cas. No. 10,922; Adams v. Steamboat Co., 151 N. Y. 163, 45 N. E. 369, 34 L. R. A. 682, 56 Am. St. Rep. 616; Penn. R. R. v. Vandiver, 42 Pa. 365, 82 Am. Dec. 520; Am. & Eng. Enc. of Law (2d Ed.) vol. 5, pp. 542–5; 6 Cyc. pp. 598–601.

The libelant was not negligent in leaving her stateroom door on the hook, which was used by her precisely as it was intended to be used. To hold that a passenger is guilty of negligence in using an appliance furnished by the carrier, to accomplish the purpose for which it was furnished, involves the implication that the carrier was negligent in furnishing it. There was nothing unusual in the use of the hook. It was a disagreeable night, rainy and foggy, when the portholes would naturally be closed. The libelant had not retired for the night; her light was burning and there was nothing to induce her to suspect that there was a thief among those whose duty it was to guard her and her property.

We think the notice of claim given the transport company or its agents was a substantial and sufficient compliance with the provisions of the ticket.

It remains to consider whether the District Court was justified in allowing a recovery for the value of the lost property over and above the $5,000 for which the vessel was bonded. · There can be no doubt that at the commencement of the action the libelant had fully committed herself to $5,000 as the value of her jewelry. This was the sum stated in the written notice of claim signed by her proctor; it was again stated in her libel, in her answer to one of the claimant's interrogatories and in the stipulation and bond. If the claimant had been misled to its injury by reason of this mistake, we should be inclined to hold the libelant strictly to the sum thus demanded, but the claimant has not been misled in the slightest degree; the cause has proceeded precisely as it would have proceeded had the value been stated at $7,500 instead of $5,000. The mistake was a natural one. The libelant, at the outset, unmindful of the appreciation in value of diamonds and emeralds, gave the value of the cost price 12 or 15 years previous, and not at their actual worth at the time of the theft. If after the decison the claimant had offered to stipulate the damages at $5,000, a much more difficult question would be presented, but this was not done, and a reference was ordered.

The libelant called a jeweler of high character and long experience who was an expert in precious stones and thoroughly familiar with the lost jewelry, having frequently seen and handled the more valuable pieces. He stated the value of all the lost articles, giving a minimum and a maximum sum. For instance, he stated the value of the most elaborate piece—the diamond crescent—to be between $3,000 and $3,-500. No testimony was offered by the claimant to dispute this proof,

although the case was remanded for that purpose, and the commissioner made a conservative report, accepting the minimum valve given and assessing the libelant's damage, in round numbers, at $7,000. That the amount of the loss was at least $7,000 is not disputed and cannot be disputed upon this proof.

In dealing with the question the district judge says:

"No merit appears in the claimant's exceptions. Every opportunity has been given it to contest the question of value. None has been availed of, and the exceptions must be overruled. The libelant moves to amend her libel by changing the allegation of damage so that the same shall read more than $7,500, instead of more than $5,000. This motion is granted."

The question, then, is, shall the libelant be precluded from recovering the full amount of her damages because, through inadvertence, she stated them in her pleading at $2,000 less than they actually are? Were this an ordinary action at common law or in equity, to state the question would be to answer it. Amendments conforming the pleadings to the proof are constantly being permitted under similar conditions. No case has been cited and we have been unable to find one preventing the court, sitting in admiralty, from exercising a sound discretion in allowing amendments where the object is merely to correct an estimate as to value, involving the introduction of no new facts or change in the cause of action. The Atlantic Transport Company appeared in the action as claimant, and it was within the power of the court to direct a decree against it for the balance of the libelant's loss. A court of admiralty has powers akin to those of a court of equity, and should not be hampered in its efforts to reach a substantial justice by the inexorable rules invoked by the claimant. As it was said by the Supreme Court:

"It is objected that the libel does not specifically charge this antecedent negligence as a fault. This is true, and the libel is defective on that account, but in admiralty an omission to state some facts which prove to be material, but which cannot have occasioned any surprise to the opposite party, will not be allowed to work any injury to the libelant if the court can see there was no design on his part in omitting to state them. There is no doctrine of mere technical variance in the admiralty, and, subject to the rule above stated, it is the duty of the court to extract the real case from the whole record and decide accordingly." The Syracuse, 79 U. S. 167, 20 L. Ed. 382.

The decree of the District Court is affirmed, with interest and costs.

The libelant has made a motion to rearrest the ship and for a new bond in the sum of $15,000, but, in view of our decision upon the appeal, we deem it unnecessary to decide this motion.