**MOSHER v. TATE et al.**
**THE FEARLESS.**
No. 12370.
United States Court of Appeals
Ninth Circuit.
May 24, 1950.

MacCormac Snow, Portland, Or., for appellant.

Wood, Matthiessen & Wood, Lofton L. Tatum, Portland, Or., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellant instituted this admiralty proceeding by filing a libel against the "otter trawl" fishing boat Fearless seeking the recovery of wages alleged to be due appellant and his three assignors, all members of the crew of the Fearless.[1] The boat was arrested by the marshal pursuant to a warrant of arrest and monition issued by the court. Appellees, owners of the vessel, answered as claimants. They denied that any indebtedness was due appellant or his assignors and alleged as an affirmative defense that the members of the crew were engaged to operate the Fearless under an oral agreement which was subject to the terms of a standard fishermen's union contract. A copy of this contract was attached to the answer and incorporated by reference. It provides, generally, that the crew is to be paid 60% of the net proceeds of the season's catch (after the deduction of certain expenses)[2] Appellees alleged that the crew engaged in fishing operations for one short voyage and then voluntarily left the employment of the boat.

Appellees further alleged, by way of "cross-libel," four causes of action seeking recovery of monies alleged to be due

---

1. Appellant sought recovery of $744 for himself. This amount was alleged to be the reasonable and agreed price of 62 days' service performed at the request of the owners of the boat. The assignors and their claims are: Wilbert Mosher (appellant's father), $1280 for 64 days' service; George Mosher (appellant's uncle), $300 for 200 hours of service; Everett Mosher (appellant's brother), $744 for 62 days' service.

2. One clause of the contract provided for the payment of hourly wages under certain conditions. Its applicability will be discussed below.

them by appellant and his assignors.[3] The findings and conclusions of the trial court (which were prepared and submitted by appellees) made no reference to the facts alleged in the cross-libels but appellees do not claim error in this regard. We therefore disregard the cross-libels except insofar as they may have some bearing on a procedural issue which is considered later.

It appears from the record that libelant and his assignors (with the exception of George Mosher, who joined the crew on or about December 16) came aboard the vessel at Portland, Oregon on November 3, 1948 and spent several days getting it in shape for fishing. They then started down the Columbia River, but before they could get to sea to fish the boat was beset by a series of mechanical difficulties. Repairs were made, apparently by the joint efforts of the Moshers and outside mechanics. The testimony is in conflict concerning how much time was spent by the Moshers in working on the boat and how much was spent in idleness awaiting a fishing chance. At any rate on January 7, 1949, they finally put to sea but were able to make but a single drag with the net before the hauling gear gave out.[4] On the homeward trip the boat's engine again became disabled and the boat was towed in by the Coast Guard. Two days' work by the Moshers repaired the engine.

Thereafter and following a conversation with the owners (appellees) the Moshers' employment was terminated. Appellees contend that the employment was terminated by mutual consent; appellant contends that the crew was discharged. The record would support a finding either way on this issue depending upon which witnesses the court believed. However, the trial court made no finding on this factual issue. It should have done so. We think (for reasons which will appear hereafter) that the findings of fact are also incomplete in other respects and that they are somewhat inconsistent.

The trial court found that appellant and his assignors "were employed to operate the Fearless in the fishing trade upon a lay basis, *subject to the terms of a working agreement of the Otter Trawlers Union.*" (Emphasis supplied.) This finding is not disputed by any of the parties. The court then found that "during said employment [from November 3, 1948 to January 10, 1949] the libelant and his assignors performed 12 days' labor for which the court allows a recovery of $10.00 per day, $8.00 per day and $6.00 per day, being in all $24.00 per day or a total of $288.00." This finding would indicate that only three of the Moshers were allowed a recovery. A decree for recovery of that amount and costs was entered in favor of appellant.

We cannot determine from the findings which one of the four Moshers was denied recovery nor can we say whether that denial resulted from a court's unexpresssed determination that the evidence did not warrant a recovery for one of them, or whether it resulted from oversight or inadvertence. The record does not disclose how the trial court determined the various rates of recovery which it "allowed," nor which rate was given to each of the three Moshers who were allowed a recovery.

The Otter Trawlers Union contract provides: "Any work done on otter trawls after one day by any member promised a fishing chance, who is released without legitimate cause and does not have the opportunity to fish with said otter trawl seine shall be paid at the rate prescribed above, $1.50 per hour." Appellant contends that the members of the crew, after being promised a fishing chance, were released without legitimate cause before they had had an "opportunity to fish," and, therefore, the contract wage ($1.50 per hour or $12.00 per 8 hour day) applies, rather than the lower rates allowed by the trial judge.

Appellees do not argue that the single drag with the net was an "opportunity to fish" within the meaning of the em-

---

3. $195 for cash advances; $169.89 for groceries; $38.98 for diesel oil; $419.75 for damage to the boat alleged to have been caused by the crew's negligent grounding of the vessel.

4. The proceeds from the catch amounted to $52.00; about half of this amount was spent in the purchase of repair parts for the engine.

ployment agreement which contemplated a season's fishing venture. However, they do dispute appellant's allegation that the Moshers were released without legitimate cause; they contend that the Moshers voluntarily terminated the employment. As indicated above this issue should have been determined by the trial court. Despite the fact that this is an admiralty proceeding and hence, according to some general observations in certain of the cases the appeal provides a "trial de novo,"[5] this court is not justified in attempting to resolve factual disputes arising from conflicts in the oral testimony in this case. We cannot evaluate the credibility of witnesses by merely reading a cold record.

■ The case must, therefore, be remanded for further findings of fact. If the trial court finds that the Moshers were discharged without legitimate cause and without being given an opportunity to fish, then each of them is, under the provisions of the agreement, entitled to compensation at the rate of $1.50 per hour (after the first day) for the work required by the contract (repair and maintenance of net and gear, cleaning the boat, etc.) which he performed on the vessel. If it finds that the employment was terminated by mutual consent then the Moshers would not be entitled to recover under the terms of the agreement. However, in either event, they should be entitled to recover the reasonable value of their service for the work they performed in making the major repairs to the boat's engine, because that type of work was in addition to and beyond the scope of their duties as set out under the provisions of the employment agreement. The evidence was in sharp conflict concerning the amount of time (if any) which the members of the crew spent in repairing the engine. This conflict, too, must be resolved by the trial court and made the subject of adequate findings.

■ Appellant argues that he is entitled to recover for himself and his as-signors for the entire period of time which was spent "in the service of the ship," meaning thereby to include the "waiting time." We find nothing in the contract permitting recovery for "waiting time," and we are persuaded that there could be no quasi-contractual recovery for periods of idleness. Appellant next states that, in any event, "virtually all" of the period alleged in the complaint was spent in actual work. As we have indicated above, the amount of time which the crew actually worked is for determination by the trial court who heard the conflicting testimony of the witnesses. On the record before us we cannot say that the twelve days allowed by the trial court was "clearly erroneous." However, that court may, if it see fit, amend its finding in this regard, in light of the factual and legal issues delineated above.

■ There are several procedural difficulties which must be considered. In the first place, no publication of the warrant of arrest was made as required by Admiralty Rule 10, 28 U.S.C.A. However, this omission did not defeat the jurisdiction of the court or serve to prejudice the rights of appellees. St. Charles Amusement & Transp. Co. v. Elhardt, 8 Cir., 254 F. 275, certiorari denied 249 U.S. 604, 39 S.Ct. 260, 63 L.Ed. 798.

Prior to trial the parties agreed on the form of a proposed restraining order which would have permitted a limited release of the vessel for fishing purposes only. To protect appellant the proctor for appellant was made a joint beneficiary on the boat's insurance policies. However, the trial court refused to enter the proposed order. Appellees wanted the use of the vessel but were unable to furnish the bond or stipulation required for its release. Thereupon the case was set for early trial. After the trial the court rendered an oral decision to the effect that appellant was entitled to recover $288 and ordered the vessel released from the custody of the marshal.

5. Menefee v. W. R. Chamberlin Co., 9 Cir., 176 F.2d 828; Rice Growers' Ass'n v. Rederiaktiebolaget Frode, 9 Cir., 171 F.2d 662, 663. See, however, Petterson Lighterage & Towing Corp. v. New York Cent. R. Co., 2 Cir., 126 F.2d 992 in which Judge L. Hand concludes that modernly appeals in admiralty are treated just about the same as other appeals in the federal courts.

The release was ordered upon the motion of the marshal who had demanded security for his costs.

█ The trial court should not have ordered the release of the vessel until appellees had given adequate security.[6] The fact that a month after the release appellees deposited $345 into the registry of the court will not rectify the error in the event that upon remand it is determined by the court that appellant is entitled to a larger award.

Ordinarily the failure of the trial court to require sufficient security for the release of a vessel would not occasion serious difficulties because under 28 U.S.C.A. § 2464 (c) the court would have the power to require further security at any time. However, in this case, several months after the vessel was released and delivered to appellees, and *after* the decree had been entered and the appeal taken, the vessel burned and was totally destroyed. Its insurance policies were still payable jointly to appellees and to appellant's proctor. The latter consented to release all but $4,000 of the proceeds of the policies, which amount he deemed sufficient to satisfy any possible recovery. That amount is now held in a joint certificate of deposit by the parties named pending final determination of this litigation.

Appellant, seeking to insure satisfaction of the decree in the event that he is successful in obtaining a higher recovery than the $345 now held in the registry of the court, has filed in this court a petition for an order directing the trial court to permit the filing of an amended and supplemental libel and to issue and serve process in personam upon appellees. It is claimed that this procedure is authorized by The Monte A., D.C., 12 F. 331.

█ We deem it unnecessary to rule upon this petition for we think that under all of the circumstances of this case and in order to achieve substantial justice the trial court has power to enter a personal decree against appellees without any additional service of process or supplemental libel. As we have shown, the court below erred in ordering the release of the vessel without requiring a sufficient bond from appellees.

In The Fairisle, D.C., 76 F.Supp. 27, 34, the court, in an in rem proceeding, had fixed the amount of the bond at $25,000 and released the vessel. This amount proved to be too low, for, upon trial, a total of $45,100 was awarded libelants. The court held that since the owners had appeared to contest their liability, "they may equitably be treated as if they had been brought into the court by personal process", and entered a decree for the recovery of the full award. In The Minnetonka, 2 Cir., 146 F. 509, a $5,000 bond was posted but a recovery of $7,000 was awarded. The second circuit affirmed the decree, stating, 146 F. at page 515: "The Atlantic Transport Company appeared in the action as claimant, and it was within the power of the court to direct a decree against it for the balance of the libelant's loss. A court of admiralty has powers akin to those of a court of equity, and should not be hampered in its efforts to reach a substantial justice by the inexorable rules invoked by the claimant."

█ Appellees cite cases holding that an action in rem cannot be converted to an action in personam. Most of those cases were decided prior to the amendment of

6.  28 U.S.C.A. § 2464 requires claimants who desire the release of a vessel to post a bond or stipulation in double the amount claimed by the libelant, unless the parties stipulate to a lesser amount or the court fixes a lesser amount. Admiralty Rule 12 permits the court to order a sale of the vessel if the claimant does not give a stipulation or bond or apply for an appraisement. Admiralty Rule 57 provides that even when a bond is filed and a release ordered pursuant to § 2464 "the marshal shall not deliver any property so released until the costs and charges of the officers of the court shall first have been paid into the court by the party receiving such property subject to the decision of the court with respect to the amount of costs due such officers." Appellant could not be required to post the bond demanded by the marshal to secure his costs since seamen are exempted from furnishing security for costs under the provisions of 28 U.S.C.A. § 1916, formerly § 837.

Admiralty Rule 13 when actions in rem could not be joined with actions in personam, The Ethel, 5 Cir., 66 F. 340. However, since the amendment to the rules now permits such joinder in suits for mariners' wages, see Willard Sutherland & Co. v. United States, D.C., 8 F.2d 358, there appears to be no just or logical reason for application of the former prohibition to the facts shown in the case at bar.

Also, we think that appellees should not be heard to complain about any lack of service of process on them personally. Both of them reside within the jurisdiction of the district court. They had ample notice of the proceeding and appeared and filed their claim. Not only did they defend on the merits but they filed a cross-libel seeking to recover personally from appellant and his assignors certain sums alleged to be due them which arose out of the same fishing transaction upon which the libel was filed. They introduced testimony seeking to substantiate their claims. The trial court's error in releasing the vessel without bond was at least in part engendered by appellees' declarations that unless the vessel was released for fishing they would suffer irreparable injury, and by their refusal to post a bond. There is no danger that the amount of the final award will exceed appellees' interest in the vessel at the time the bond should have been given.

The case is remanded to the court below with instructions to enter amended findings of fact, conclusions of law and decree in harmony with the views here expressed.