**HAWKSPERE SHIPPING CO. LTD.**

v.

**65 BUNDLES OF SECONDARY ALUMINUM, GRADE A380.1, and 32 Pieces of Aluminum Alloy Sows, Grade AK5M2, in rem.**

**Intamex, S.A. and Amalco, A.G.**

v.

**Hawkspere Shipping Co. Ltd. and M/V Anangel Fidelity.**

No. S 00–CV–2306.

United States District Court, D. Maryland.

May 22, 2001.

Jo Anne Zawitoski, Alexander M. Giles, Semmes, Bowen & Semmes, PC, Baltimore, MD, for Hawkspere Shipping Co. Ltd.

J. Stephen Simms, Greber & Simms, Baltimore, MD, for 65 Bundles of Secondary Aluminum, Grade A380.1 and 32 Pieces of Aluminum Alloy Sows, Grade AK5M2.

J. Stephen Simms, Stephen Salvatore McCloskey, Greber & Simms, Baltimore, MD, Sarah Elizabeth Parshall, Owings Mills, MD, for Intanex, S.A. and Amalco, A.G.

## MEMORANDUM OPINION AND ORDER

SMALKIN, Chief Judge.

This case started with the filing of a claim *in rem* against certain cargo that had been carried on a vessel named the ANANGEL FIDELITY, owned by the plaintiff, Hawkspere Shipping Co. Ltd. (Hawkspere). The contract of carriage called for the shipment of the cargo from St. Petersburg, Russia, to Baltimore, Maryland. The ocean freight for the cargo was to have been paid four business days after signature on the bills of lading covering the cargo, but Hawkspere claims it has never been paid the freight. The shippers, Intamex and Amalco, claim that they have paid ocean freight for the shipment to an entity known as International Commodities Transport Services (ICTS), and they have filed a counterclaim contesting the assertion by plaintiff of a maritime lien and seeking damages in consequence thereof. ICTS is an Alabama corporation that packages shipments bound for a common destination and charters a vessel to carry the cargo on behalf of the various shippers. ICTS utilized charterparties drafted by its New York lawyer to hire the vessels, but ICTS did not issue the bills of lading for this cargo, which identified Intamex and Amalco as the shippers. Hawkspere timely invoiced ICTS for the shipping charges on the cargo, which was loaded aboard the vessel on May 16, 2000. ICTS, through a freight forwarder (ITL) in Russia, billed the shippers, asking that payment be made in part to ICTS and in part to an ITL-nominated bank account.

Although the shippers claim to have paid the full freight charge to ICTS, ICTS has not paid Hawkspere in full in connection with the freight charge owed by Intamex and Amalco, thus leaving a substantial balance, in consequence of which the present lien was asserted.[1]

It is clear under United States law that, where a shipper chooses to pay a freight forwarder who does not remit the payment to the ocean carrier, the shipper assumes the risk that the freight forwarder might not pay the freight to the carrier, and the shipper's duty to pay freight is not discharged, absent evidence that the freight forwarder was acting as the agent of the carrier. *Strachan Shipping Co. v. Dresser, Indus.,* 701 F.2d 483 (5th Cir. 1983). Although Fourth Circuit case law has not addressed the issue, this Court agrees with the *Strachan* principle and will apply it in this case for reasons expressed by the Eleventh Circuit in *National Shipping Co. of Saudi Arabia v. Omni Lines,* 106 F.3d 1544, 1546–47 (11th Cir.1997), where the Eleventh Circuit observed,

---

1. It appears that Hawkspere may have received some funds from ICTS which were in payment of freight charges owed to it by shippers other than Intamex and Amalco.

"[s]hould the shipper wish to avoid liability for double payment, it must take precautions to deal with a reputable freight forwarder or contract with the carrier to secure its release." Here, even though there is evidence that the shippers could have paid the carrier directly, they chose not to do so. Defalcations of the freight forwarder are, under the authorities cited above and adopted by this Court, at the risk of the shipper, not the carrier.

■■■ There is insufficient evidence to generate any triable dispute under the rules in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that ICTS was imbued with any species of authority recognized by American law to act on behalf of the carrier. The shippers argue, without any convincing basis for doing so, that the case should be governed by English law. The rationale for their argument (as noted by the carrier) is, at best, murky. The *in rem* lien asserted in this case could only have arisen upon the unloading of the cargo, which occurred in the United States. Such a possessory lien arises under the domestic law of the United States. *The Bird of Paradise,* 5 Wall. 545, 72 U.S. 545, 18 L.Ed. 662 (1866). To the extent that the shippers claim that the application of English law to this case is compelled by the terms of the charterparty, it is noted that this charterparty, although stating that it is governed by English law, incorporates the clause "USA Paramount." The term "USA Clause Paramount" is construed to mean United States law, including COGSA, governs. While the shippers point out that the language is missing the word "clause", it is obvious that the intent was to integrate the "USA Clause Paramount" into the charterparty.

In any event, this case is not about a breach of the charterparty, and even if it were, this Court finds that the choice of law rules applicable to this case would favor American law over English law. *See Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Here, the freight forwarder was an American company, the charterparty was drafted in New York and negotiated through a broker in Houston, required payment was in United States dollars, there was a United States Clause Paramount, and the goods were shipped to, and seized in, Baltimore, Maryland. These factors clearly weigh in favor of the application of United States law, rather than English law, especially as England has no real connection with the case in general, or with the present controversy in particular.

■■■ There is no evidence at all that ICTS was imbued with actual (express or implied) authority by Hawkspere. The only evidence of apparent authority is that Hawkspere was occasionally paid by ICTS. There simply is no evidence of conduct on the part of Hawkspere that would have led a reasonable person to conclude that ICTS was acting as Hawkspere's agent. The subjective beliefs of the persons dealing with the alleged agent are insufficient to establish apparent authority. What is needed is evidence of the *principal's* conduct, which is so lacking here as not to result in a triable issue of fact. *See, e.g., Overnite Transp. Co. v. NLRB,* 140 F.3d 259, 266–67 (D.C.Cir.1998). The British doctrine of "ostensible agency," which would apparently focus more on the purported agent's actions, does not apply in this case, to which the Court is applying the domestic law of the United States.

In sum, although it might result in a hardship, the choice of where to put the risk of loss in "double exposure" cases involving payments to a freight forwarder

is properly made according to the *Strachan* rule, as cited above. To be sure, other cases have reached different results, but they are quite distinguishable on their facts, as pointed out in Hawkspere's reply memorandum at 18–20.

Having rejected the applicability of English law, the Court rejects the shippers' contention that the plaintiff has no right to assert a maritime possessory lien. The law of the United States gives the carrier that right. *The Bird of Paradise supra.*

Finally—with respect to the issues raised in the motions for summary judgment—the Court is of the opinion that the claimants are estopped from now claiming that the cargo had in fact been sold before there was notice of the lien. The shippers claimed the cargo shipped under Bills of Lading Nos. 214 and 227, on which this claim is premised, and it is too late for them now to claim that they are not the owners any longer in an attempt to avoid the maritime lien. Therefore, this Court will deny Intamex and Amalco's cross-motion for summary judgment against Hawkspere, and its motion for partial summary judgment on its counterclaim, and will grant partial summary judgment in favor of Hawkspere on the claim and counterclaim on the amount originally claimed *in rem.* This judgment is not a final order under Fed.R.Civ.P. 54.

As a final matter, Hawkspere has filed motions to increase security pursuant to Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a). Specifically, Hawkspere seeks to increase the security for the cargo from $80,000 to $100,000, and seeks to amend the complaint to increase the *in rem* claim for unpaid freight costs from $71,491.43 to $93,0007.75, and to add *in personam* claims for breach of

contract against Intamex and Amalco for the respective amounts of unpaid freight owed by them to Hawkspere.

As its factual basis for these motions, Hawkspere alleges that the letter of undertaking entered into between the parties, providing that $80,000 was to be placed in escrow as security for the cargo, was based on the belief that Intamex and Amalco owed ocean freight of $71,491.43 to Hawkspere. According to Hawkspere, both parties were mistaken at that time as to the actual freight owed to Hawkspere. After taking the deposition of Tony Gilbert, a former representative of ICTS, and after undertaking further review of its documents, Hawkspere found that the amount actually owed to it for the freight totaled $93,007.75. According to Hawkspere, the mistake was attributable to the fact that ICTS wired lump sums to Hawkspere without indicating to Hawkspere the name of the shipper whose ocean freight was being paid. Because of this, Hawkspere inadvertently allocated some of the wired funds to Intamex and Amalco instead of properly allocating those funds to other shippers. As a result, Hawkspere was mistaken as to the amounts allegedly owed to it by Intamex and Amalco. While it appears that $12,000 has already been paid to Hawkspere by ICTS, the record is unclear as to whether this money was in fact paid for freight owed by Intamex and Amalco, or whether it was in payment of freight owed by another shipper(s).

## A. *Motion to Amend the Complaint*

 Hawkspere seeks leave to amend its complaint to increase its *in rem* claim and to add *in personam* claims in the event that the $80,000 security posted is not sufficient to cover its damages. The initial issues presented by this motion are whether an *in rem* claim can be increased beyond the value of the security, and

whether *in personam* claims can be asserted against the parties who have appeared to defend the *in rem* action. First, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure provides that "a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable." Fed.Rule Civ.P. Supplemental Rule C(1). Furthermore, while it has been acknowledged that these issues "will undoubtedly long remain in controversy and confusion," [2] Gilmore and Black, The Law of Admiralty, § 9–90, at 805 (2d ed.1975), case law from this Court and the Fourth Circuit makes clear that a district court sitting in admiralty may enter judgment in excess of the value of the security, which may include a judgment against the owners of the property at issue in the *in rem* action. *See Savas v. Maria Trading Corp.*, 285 F.2d 336, 340–341 (4th Cir. 1960); *The Fairisle*, 76 F.Supp. 27, 32 (D.Md.1947), *aff'd sub nom., Waterman S.S. Corp. v. Dean*, 171 F.2d 408 (4th Cir.1948); *Mujahid v. M/V Hector*, 948 F.2d 1282, 1991 WL 254121, at *2 (4th Cir.1991) (unpublished) (citing *Savas* and *The Fairisle*, and vacating dismissal of *in personam* action). In *The Fairisle*, the court entered judgment for an amount above the amount of the bond that was posted as security. The court was guided by the principle that "[a] court of the admiralty has powers akin to those of a court of equity, and should not be hampered in its efforts to reach substantial justice by the inexorable rules invoked by the claimant." *The Fairisle*, 76 F.Supp. at 33. In making its decision, the court distinguished those cases in which recovery beyond the amount of the stipulated security had been denied by pointing to the fact that in those cases, the parties had agreed to the value of the security, while in the case before it, the judge had estimated the stipulated value. While this factual distinction would seem to make the holding of *The Fairisle* inapplicable to the facts of this case, courts, including the Fourth Circuit, have continued to apply its general adoption of the rule allowing an increase in the *in rem* claim and the addition of *in personam* claims, if necessary.

In *Savas v. Maria Trading Corp.*, 285 F.2d 336 (4th Cir.1960), the Fourth Circuit affirmed the district court's judgment against a former ship owner *in personam*, concluding that "[t]here is much to be said for the amelioration of the strict rule which permits the claimant of a vessel to resist the imposition of a lien without subjecting himself to a decree in personam; and this is particularly true when all the parties are before the court so that all questions in controversy can be settled in one case." *Id.* at 340. In *Mosher v. Tate*, 182 F.2d 475 (9th Cir.1950), the court determined, based on its reading of *The Fairisle*, that the court below had the power to enter a judgment *in personam* without any additional service of process. *See Mosher*, 182 F.2d at 479. The court noted that most of the cases adhering to the old rule that the owner in an *in rem* action would not be subject to an *in personam*

---

2. This controversy stems from what has been considered an erosion of the traditional American rule which provides that an admiralty court in an *in rem* action may not enter judgment personally against the owner for any deficiency. Gilmore and Black, The Law of Admiralty, § 9–90, at 802 (2d ed.1975). This rule appears to have its foundation in the "American doctrine of personification of the ship" in which the ship, and not the owner, is the defendant. *Id.* at 802. The English rule, which has gained acceptance in the United States, particularly by this Court and the Fourth Circuit, provides that a court should enter the judgment that justice requires, including the entry of a personal judgment against the owner if necessary. *See id.*

action predated the amendment to the admiralty rules which allowed *in rem* and *in personam* actions to be joined. *See id.* at 479–480.

■ Furthermore, Intamex and Amalco have themselves filed a third party complaint in this action against ICTS, as well as a counterclaim against Hawkspere, and, as the court noted in *Savas* in affirming an *in personam* judgment against the owner, "[e]ven if it was not validly served with process it should not be heard to say that the court had the power to decide in its favor but no power to render a decree against it." *Savas*, 285 F.2d at 341. Therefore, this Court has the power to enter judgment in excess of the value of the security, and if need be, against Imalco and Intamex personally. *See* Gilmore and Black, The Law of Admiralty, § 9–90, at 801 (2d ed. 1975) ("If an action *in personam* against the shipowner has been joined to the action *in rem* against the ship, there is no difficulty in collecting the deficiency from the defendant in the *in personam* action.").

The final question presented by this motion is whether the complaint may be amended to claim these additional damages in light of the conclusion reached above that a court sitting in admiralty may enter judgment in excess of the posted security, and if necessary, against the shippers personally. Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Under the standard set forth in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), as interpreted by *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir. 1980), there is no showing that there would be any prejudice to Intamex and Amalco in allowing for the complaint to be amended, or that the amendment would be futile, or that Hawkspere has acted in bad faith by

seeking to amend the complaint. *See Davis*, 615 F.2d at 613. There has been no prejudice to the shippers, as they have appeared in this case to claim the arrested cargo, have filed a counterclaim challenging the maritime lien on the cargo, and have also filed a third party complaint against ICTS. Therefore, it can hardly be said that Amalco and Intamex have been unaware of the events surrounding this action. Furthermore, while Hawkspere could have done a better job of examining its books to determine its damages at the time it filed the original complaint, it was not until discovery that it became aware that moneys paid to it by ICTS came from other shippers, and not from Amalco and Intamex. In any event, the delay, without any resulting prejudice or dilatory motive, is not enough to deny a motion to amend the complaint. *See Davis*, 615 F.2d at 613. Therefore, Hawkspere's motion for leave to file an amended complaint is granted.

**B. *Motion to Increase Security***

Hawkspere asks this court to increase the security on this claim pursuant to Rule E(6). Rule E(6) provides that "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing." Fed.Rule Civ.P. Supplemental Rule E(6).

■ In *Industria Nacional Del Papel, CA. v. M/V Albert F.*, 730 F.2d 622 (11th Cir.1984), which appears to be the leading case addressing this issue, the court concluded that a mistake in calculating the amount of security that is not the result of fraud or misrepresentation, and is not caused by the court, is insufficient to justify an increase in security. *See id.* at 626. (quoting 7A Moore's Federal Practice, § E.14 at E–710, E–711 n. 30 (2d

ed.1983)). The court found that the parties' mistaken beliefs about the length of the litigation did not justify the posting of additional security.

 In *L & L Marine Transp., Inc. v. M/V Hokuetsu Hope*, 895 F.Supp. 297 (S.D.Ala.1995), the court considered a situation almost identical to the one at issue in this case. In *L & L,* the plaintiff determined, after accepting a letter of undertaking, that its damages were greater than had originally been calculated. *See id.* at 299. As a result, the plaintiff filed a motion with the court to increase security pursuant to Rule E(6). The plaintiff, like Hawkspere, did not allege fraud or misrepresentation but rather argued that it had mistakenly calculated its damages. The court denied the motion, concluding, based on *Industria Nacional,* that because the mistake in the amount of damages owed was not itself a result of fraud or misrepresentation, that an increase in security was not warranted. *See id.* at 301. *See also Chiquita Int'l Ltd. v. Liverpool and London S.S. Prot. and Indem. Assoc. Ltd.,* 124 F.Supp.2d 158, 166–167 (S.D.N.Y. 2000). Furthermore, courts have been reluctant to change the amount of security where the amount was agreed upon by the parties in advance. *See Rolls Royce Industrial Power (India) v. M/V FRATZIS M.,* 1995 WL 846690, at *9 (S.D.N.Y.1995). Here, there is no evidence that Hawkspere's mistake as to the amount of ocean freight still owed to it was a result of fraud or misrepresentation. In addition, the parties had already agreed, after a series of negotiations, to set the amount of security at $80,000. Therefore, Hawkspere's motion to increase security is hereby denied.

For the reasons stated, it is hereby ORDERED:

1. That Hawkspere's motion to increase security, BE, and it hereby IS, DENIED;

2. That Hawkspere's motion for leave to file an amended complaint, BE, and it hereby IS, GRANTED;

3. That Hawkspere's motion for partial summary judgment on the complaint and for summary judgment on the counterclaim, BE, and it hereby IS, GRANTED, as to the amount originally claimed *in rem;*

4. That Intamex and Amalco's cross-motion for summary judgment and for partial summary judgment on the counterclaim, BE, and it hereby IS, DENIED; and

5. That the Clerk of the Court send copies of this Memorandum Opinion and Order to the Counsel for the Parties.